**FILED**

AUG 11 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **JUDGE DOW** |
| | ) | **08 CR   632** |
| v. | ) | |
| | ) | Violation: Title 18, United States Code, |
| LAWRENCE KEOGH | ) | Sections 371 and 2 |

**MAGISTRATE JUDGE NOLAN**

The UNITED STATES ATTORNEY charges:

1. At times material to this count:

   a. Defendant LAWRENCE KEOGH owned and operated a company called Keogh, Inc., which was located in Woodstock and Lake Bluff, Illinois. Keogh, Inc. was in the business of administering employee incentive programs.

   b. Lawson Products, Inc. ("Lawson Products") was a publicly traded company organized under the laws of the State of Delaware, with its principal offices in Des Plaines, Illinois. Lawson Products was a distributor and marketer of systems, services and products sold to various entities in the public and private sectors. Lawson Products was the parent company of several subsidiaries, including Drummond American Corporation and Cronatron Welding Systems, Inc. Lawson Products generated approximately $400 million in sales annually.

   c. Lawson Products sold its products through sales agents. These sales agents generally were permitted by Lawson Products to negotiate with its customers over the prices their customers would pay for Lawson Products merchandise. As a general rule, Lawson Products profits and the sales agents' commissions were greater if they sold products at higher prices.

d. Until approximately December 15, 2005, Lawson Products maintained programs, including a Keogh, Inc. program called "Winners Choice," which allowed Lawson Products and its sales agents to provide items of value to employees of Lawson Products's customers for purchasing Lawson Products merchandise on behalf of Lawson Products's customers.

e. Under Winners Choice, Keogh, Inc. issued checks payable to employees of Lawson Products's customers and to retail stores selected by the recipients of the checks. Keogh, Inc. would mail these checks to the employees of Lawson Products's customers, who could then use these checks to purchase items in the designated retail stores. There were several steps that occurred before Keogh, Inc. would issue these checks:

      i. Cold Certificates. The first step was for sales agents to place orders for "cold certificates" with Lawson Products, which would then inform Keogh, Inc. of the orders. The sales agents would designate the recipient, the mailing address, the number of cold certificates, and the denomination of the cold certificates. Although the cold certificates were limited to $10 or $25 increments, sales agents could order multiple cold certificates totaling far in excess of $25 to be sent to a recipient.

      ii. Redemption of Cold Certificates. Next, Keogh, Inc. would ship, via mail or courier, the cold certificates to the recipient at the designated address. Along with the cold certificates, Keogh, Inc. sent a list of retail stores participating in the Winners Choice program. To redeem the cold certificates, the recipient would fill out an order form by selecting a retail store and the address where Keogh, Inc. should send the check. The recipient then sent the order form back to Keogh, Inc. through the mail or online.

      iii. Checks. Once the recipient had redeemed the cold certificates, Keogh, Inc. mailed one or more checks, also known as "hot certificates," to the recipient. While each check was written for $50 or less, Keogh, Inc. could mail multiple checks totaling far in excess of $50 to a recipient. The checks issued by Keogh, Inc. would list two payees: (1) the individual recipient and (2) the retail store designated by the individual recipient. The individual recipient could

then use the checks at the designated retail store.

f. Pursuant to Title 26, United States Code, Section 6041 and Treasury Regulations 1.6041-1 *et. seq.*, Lawson Products was required to file information returns (Forms 1099) with the Internal Revenue Service ("IRS") for payments of compensation and income made in the course of its business to other persons of $600 or more in each calendar year.

g. Pursuant to Title 26, United States Code, Section 162(c), a business could not claim a business expense for:

    i. Any payment made, directly or indirectly, to an official or employee of any government, if the payment constituted an illegal bribe or kickback; or

    ii. Any payment made, directly or indirectly, to any person, if the payment constituted an illegal bribe, illegal kickback, or illegal payment under any law of the United States, or under any law of a State, which subjects the payor to a criminal penalty or the loss of license or privilege to engage in a trade or business.

2. Beginning no later than 1992 and continuing until approximately December 15, 2005, at Des Plaines, Vernon Hills, Woodstock, and Lake Bluff, in the Northern District of Illinois, and elsewhere,

LAWRENCE KEOGH,

defendant herein, did knowingly aid and abet an offense against the United States, namely a conspiracy to:

a. willfully attempt to evade and defeat any tax and the payment thereof, in violation of Title 26, United States Code, Section 7201; and

b. corruptly obstruct and impede, and endeavor to obstruct and impede the due administration of Title 26 of the United States code, in violation of Title 26, United States Code

Section 7212.

3. It was part of the conspiracy that Lawson Products, its officers and employees, and defendant KEOGH agreed to have Keogh, Inc. administer the Winners Choice program to provide income to employees of Lawson Products's customers.

4. It was further part of the conspiracy that from on or about March 11, 1992 through on or about December 15, 2005, Lawson Products directed defendant KEOGH to provide, and defendant KEOGH did provide, approximately $9.7 million in income in the form of Winners Choice checks to employees of Lawson Products's customers in order to induce the employees to purchase, and to reward them for purchasing, merchandise from Lawson Products on behalf of their employers.

5. It was further part of the conspiracy that, as defendant KEOGH well knew, Lawson Products knowingly did not issue or file any IRS Form 1099s for those individuals receiving in excess of $600 in a year in income from Winners Choice checks at the direction of Lawson Products, and, to aid and abet the conspiracy, defendant KEOGH did not issue or file any IRS Form 1099s on behalf of Lawson Products for those individuals receiving in excess of $600 a year in income from Winners Choice checks.

6. It was further part of the conspiracy that, as defendant KEOGH well knew, Lawson Products improperly deducted the cost of the Winners Choice program as business expenses on its federal tax returns, resulting in an approximate $1,193,591 tax loss to the United States.

7. It was further part of the conspiracy that, defendant KEOGH and Lawson Products took steps to disguise the fact that Lawson Products was providing significant income to Winners Choice recipients and to make it appear as though its Winners Choice expenditures were tax

deductible having defendant KEOGH issue Winners Choice cold certificates in increments of no more than $25 and Winners Choice checks in increments of no more than $50.

8. It was further part of the conspiracy that Lawson Products sales agents told recipients that the Winners Choice income was "not taxable," "untraceable," and could not be linked to Lawson Products.

9. It was further part of the conspiracy that defendant KEOGH and Lawson Products took steps to make it more difficult for the IRS to trace the Winners Choice cold certificates and checks to the proper taxpayers, including:

    a. At the instruction of Lawson Products, defendant KEOGH removed a question on the Winners Choice cold certificates that asked the recipient for his or her social security number; and

    b. Lawson Products redacted the name of the recipients' employer from the Winners Choice cold certificate order forms that it sent to defendant KEOGH.

10. It was further part of the conspiracy that defendant KEOGH, at the direction of Lawson Products, sent Winners Choice cold certificates and checks to the home addresses, rather than the business addresses, of the recipients, to conceal the fact that Lawson Products and its sales agents were providing income to Lawson Products's customers' employees.

11. It was further part of the conspiracy that Lawson Products and defendant KEOGH misrepresented, concealed and hid, and caused to be misrepresented, concealed and hidden, the purposes of and acts done in furtherance of the aforementioned conspiracy.

## OVERT ACTS

12. In furtherance of and to effect the objects of the conspiracy, defendant KEOGH did commit the following acts, among others, in the Northern District of Illinois, Eastern Division, and elsewhere:

    a. On or about March 2, 2004, defendant KEOGH, at the direction of Lawson Products, issued approximately 48 Winners Choice cold certificates valued at $25 each for a total of approximately $1,200 to the spouse of Ronald Gholdson, an employee of Lawson Products customer Reilly Industries.

    b. On or about March 23, 2005, defendant KEOGH, at the direction of Lawson Products, issued approximately 30 Winners Choice cold certificates valued at $25 each for a total of approximately $750 to the spouse of Ronald Gholdson, an employee of Lawson Products customer Reilly Industries.

    c. On or about August 31, 2004, defendant KEOGH, at the direction of Lawson Products, issued approximately 31 Winners Choice cold certificates valued at $25 each for a total of approximately $775 to Greg Terry, an employee of Lawson Products customer Ada S. McKinley Community Services.

All in violation of Title 18, United States Code, Sections 371 and 2.

*Patrick J. Fitzgerald*
UNITED STATES ATTORNEY