UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
SEP 3 - 2008

Judge Robert M. Dow, Jr.
United States District Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 08 CR 632 |
| vs. | ) | |
| | ) | Judge Robert M. Dow |
| LAWRENCE KEOGH | ) | |

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant LAWRENCE KEOGH, and his attorney, THOMAS J. SCORZA, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure.  The parties to this Agreement have agreed upon the following:

### Charge in This Case

2.     The information in this case charges defendant with aiding and abetting an offense against the United States, namely a conspiracy to: (a) willfully attempt to evade and defeat any tax and the payment thereof, in violation of Title 26, United States Code, Section 7201; and (b) corruptly obstruct and impede, and endeavor to obstruct and impede, the due administration of Title 26 of the United States Code, in violation of Title 26, United States Code, Section 7212; in violation of Title 18, United States Code, Sections 371 and 2.

3.     Defendant has read the charge against him contained in the information, and that charge has been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crime with which he has been charged.

## Charge to Which Defendant is Pleading Guilty

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the information, which charges defendant with aiding and abetting an offense against the United States, namely a conspiracy to: (a) willfully attempt to evade and defeat any tax and the payment thereof, in violation of Title 26, United States Code, Section 7201; and (b) corruptly obstruct and impede, and endeavor to obstruct and impede, the due administration of Title 26 of the United States Code, in violation of Title 26, United States Code, Section 7212; in violation of Title 18, United States Code, Sections 371 and 2.

## Factual Basis

6.      Defendant will plead guilty because he is in fact guilty of the charge contained in the information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

Beginning no later than 1992 and continuing until approximately December 15, 2005, at Des Plaines, Vernon Hills, Woodstock, and Lake Bluff, in the Northern District of Illinois, and elsewhere, defendant herein, did knowingly aid and abet an offense against the United States, namely a conspiracy to: (a) willfully attempt to evade and defeat any tax and the payment thereof, in violation of Title 26, United States Code, Section 7201; and (b) corruptly obstruct and impede, and endeavor to obstruct and impede the due administration of Title 26 of the United States Code, in violation of Title 26, United States Code Section 7212, in violation of Title 18, United States Code, Sections 371 and 2.

2

Specifically, defendant owned and operated a company called Keogh, Inc., which was located in Woodstock and Lake Bluff, Illinois. Keogh, Inc. was in the business of administering employee incentive programs. Lawson Products, Inc. ("Lawson Products") was a publicly traded company organized under the laws of the State of Delaware, with its principal offices in Des Plaines, Illinois. Lawson Products was a distributor and marketer of systems, services and products sold to various entities in the public and private sectors. Lawson Products was the parent company of several subsidiaries, including Drummond American Corporation and Cronatron Welding Systems, Inc. Lawson Products generated approximately $400 million in sales annually.

Lawson Products sold its products through sales agents. These sales agents generally were permitted by Lawson Products to negotiate with its customers over the prices their customers would pay for Lawson Products merchandise. As a general rule, Lawson Products's profits and the sales agents' commissions were greater if they sold products at higher prices.

Until approximately December 15, 2005, Lawson Products maintained programs, including a Keogh, Inc. program called "Winners Choice," which allowed Lawson Products and its sales agents to provide items of value to employees of Lawson Products's customers for purchasing Lawson Products merchandise on behalf of Lawson Products's customers.

Under Winners Choice, Keogh, Inc. issued checks payable to employees of Lawson Products's customers and to retail stores selected by the recipients of the checks. Keogh, Inc.

would mail these checks to the employees of Lawson Products's customers, who could then use these checks to purchase items in the designated retail stores. There were several steps that occurred before Keogh would issue these checks:

The first step was for sales agents to place orders for "cold certificates" with Lawson Products, which would then inform Keogh, Inc. of the orders. The sales agents would designate the recipient, the mailing address, the number of cold certificates, and the denomination of the cold certificates. Although the cold certificates were limited to $10 or $25 increments, sales agents could order multiple cold certificates totaling far in excess of $25 to be sent to a recipient.

Next, Keogh, Inc. would ship, via mail or courier, the cold certificates to the recipient at the designated address. Along with the cold certificates, Keogh sent a list of retail stores participating in the Winners Choice program. To redeem the cold certificates, the recipient would fill out an order form by selecting a retail store and the address where Keogh should send the check. The recipient then sent the order form back to Keogh through the mail or online.

Once the recipient had redeemed the cold certificates, Keogh, Inc. mailed one or more checks, also known as "hot certificates," to the recipient. While each check was written for $50 or less, Keogh, Inc. could mail multiple checks totaling far in excess of $50 to a recipient. The checks issued by Keogh, Inc. would list two payees: (1) the individual

4

recipient and (2) the retail store designated by the individual recipient.  The individual recipient could then use the checks at the designated retail store.

Pursuant to Title 26, United States Code, Section 6041 and Treasury Regulations 1.6041-1 *et. seq.*, Lawson Products was required to file information returns (Forms 1099) with the Internal Revenue Service ("IRS") for payments of compensation and income made in the course of its business to other persons of $600 or more in each calendar year.

Pursuant to Title 26, United States Code, Section 162(c), a business could not claim a business expense for: (a) any payment made, directly or indirectly, to an official or employee of any government, if the payment constituted an illegal bribe or kickback; or (b) any payment made, directly or indirectly, to any person, if the payment constituted an illegal bribe, illegal kickback, or illegal payment under any law of the United States, or under any law of a State, which subjects the payor to a criminal penalty or the loss of license or privilege to engage in a trade or business.

In approximately 1992, Lawson Products, its officers and employees, and defendant agreed to have Keogh, Inc. administer the Winners Choice program to provide income to employees of Lawson Products's customers. From on or about March 11, 1992 through on or about December 15, 2005, Lawson Products directed defendant to provide, and defendant did provide, approximately $9.7 million in income in the form of Winners Choice checks to employees of Lawson Products's customers in order to induce the employees to purchase,

and to reward them for purchasing, merchandise from Lawson Products on behalf of their employers.

As defendant well knew, Lawson Products employees knowingly agreed not to issue or file any IRS Form 1099s for those individuals receiving in excess of $600 in a year in income from Winners Choice checks at the direction of Lawson Products, and, to aid and abet the conspiracy, defendant also did not issue or file any IRS Form 1099s on behalf of Lawson Products for those individuals receiving in excess of $600 a year in income from Winners Choice checks. In approximately 1992, defendant sent Lawson Products a template Winners Choice order form, which included a place for the recipient to fill in the recipient's social security number when redeeming the certificate. Lawson Products directed defendant to remove this portion of the form. Defendant was aware that Lawson Products could not issue and file IRS Form 1099s without knowing a recipient's social security number.

Defendant also was aware that Lawson Products employees agreed to take steps to disguise the fact that Lawson Products was providing significant income to Winners Choice recipients and to make it appear as though its Winners Choice expenditures were tax deductible. Specifically, Lawson Products directed defendant to issue Winners Choice cold certificates in increments of no more than $25 and Winners Choice checks in increments of no more than $50. Lawson Products limited the amounts for each cold certificate and check because it had improperly decided to deduct these costs as business expenses on its federal tax returns regardless of the overall income it provided the recipients. These improper

deductions resulted in a tax loss to the United States of approximately $1,193,591.

Lawson Products sales agents told recipients that the Winners Choice income was "not taxable," "untraceable," and could not be linked to Lawson Products. To make it more difficult for the IRS to trace the Winners Choice cold certificates and checks to specific taxpayers, Lawson Products redacted the name of the recipients' employer from the Winners Choice cold certificate order forms that it sent to defendant.

Defendant, at the direction of Lawson Products, sent Winners Choice cold certificates and checks to the home addresses, rather than the business addresses, of the recipients, to conceal the fact that Lawson Products and its sales agents were providing income to Lawson Products's customers' employees.

Included in the Winners Choice cold certificates that KEOGH issued at the direction of Lawson Products in furtherance of the conspiracy were: (a) approximately 48 Winners Choice cold certificates valued at $25 each for a total of approximately $1,200 to the spouse of Ronald Gholdson, an employee of Lawson Products customer Reilly Industries, on or about March 2, 2004; (b) approximately 30 Winners Choice cold certificates valued at $25 each for a total of approximately $750 to the spouse of Ronald Gholdson, an employee of Lawson Products customer Reilly Industries, on or about March 23, 2005; (c) approximately 31 Winners Choice cold certificates valued at $25 each for a total of approximately $775 to Greg Terry, an employee of Lawson Products customer Ada S. McKinley Community Services, on or about August 31, 2004.

7.    The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crime and related conduct.

## Maximum Statutory Penalties

8.    Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.    A maximum sentence of 5 years' imprisonment.  This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from the offense, whichever is greater.  Defendant further understands that the judge also may impose a term of supervised release of not more than one year.

b.    Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

c.    In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

9.    Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines.  Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in

8

determining a reasonable sentence.

10.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.     **Applicable Guidelines.**  The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing.  The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guidelines Manual.

b.     **Offense Level Calculations.**

i.     The base offense level for the charge in the information is 22, pursuant to Guideline §2T1.1 and 2T4.1, because the tax loss is approximately $1,193,591;

ii.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct.  If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

iii.     In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources

9

efficiently. Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

      c.    **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

      d.    **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 19, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 30 to 37 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

      e.    Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline

calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f.     Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

### Cooperation

11.     Defendant agrees he will fully and truthfully cooperate with the United States in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil or administrative proceeding. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

11

## Agreements Relating to Sentencing

12.    At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this plea agreement, then the government shall move the Court, pursuant to Guideline §5K1.1, to depart downward from the low end of the applicable Guideline range. Defendant understands that the decision to depart from the applicable guidelines range rests solely with the Court. Defendant further understands that the government reserves the right to make whatever recommendation it deems appropriate regarding the extent of any downward departure.

13.    If the government does not move the Court, pursuant to Sentencing Guideline §5K1.1, to depart from the applicable Guideline range, as set forth above, the preceding paragraph of this plea agreement will be inoperative, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to §5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Sentencing Guideline §5K1.1.

14.    Defendant is free to recommend whatever sentence he deems appropriate.

15.    It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the

sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

16.    Regarding restitution, the parties acknowledge that the total amount of restitution owed to the Department of Treasury is $1,193,591, minus any credit for funds repaid prior to sentencing.  Ordinarily, pursuant to Title 18, United States Code, § 3663A, the Court must order defendant to make full restitution in the amount outstanding at the time of sentencing.  In this case, however, no restitution shall be ordered because Lawson Products has previously repaid these funds to the Department of Treasury.

17.    Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

### Presence Investigation Report/Post-Sentence Supervision

18.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charge against him, and related matters.  The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing, including the nature and extent of defendant's cooperation.

19.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the

Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

20.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

14

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

21.    This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case number _08 CR 632_.

22.    This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

23.    Defendant understands that nothing in this Plea Agreement shall limit the Internal Revenue Service (IRS) in its collection of any taxes, interest or penalties from defendant or defendant's partnership or corporations. Defendant understands that the amount of tax as calculated by the IRS may exceed the amount of tax due as calculated for the criminal tax case.

### Waiver of Rights

24.    Defendant understands that by pleading guilty he surrenders certain rights, including the following:

15

a.    **Right to be charged by indictment.** Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

b.    **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

16

iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.    At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

c.    **Waiver of appellate and collateral rights.**    Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial.  Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed.  Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Sentencing Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture, in exchange for the concessions made by the United States in this Plea Agreement.  In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, and (in any case in which the term of imprisonment and fine are within the maximums provided by statute) his attorney's alleged failure or refusal to file a notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255.  The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation, nor does it apply to a request by defendant pursuant to Sentencing Guideline §1B1.10 and 18 U.S.C. § 3582(c) for a reduction of sentence as a result of an amendment to the Sentencing Guidelines applicable to defendant and expressly made

18

retroactive by the United States Sentencing Commission.

        d.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Other Terms

25.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

26.    Defendant agrees to cooperate with the IRS in any tax examination or audit of defendant or any other person or entity which directly or indirectly relates to or arises out of the course of conduct which defendant has acknowledged in this Plea Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records which the IRS may request. Nothing in this paragraph precludes defendant from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

### Conclusion

27.    Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

28.    Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term

of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

29.    Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

30.    Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

31.    Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney.    Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.


AGREED THIS DATE: _September 3, 2008_


PATRICK J. FITZGERALD
United States Attorney

LAWRENCE KEOGH
Defendant


BRANDON D. FOX
NANCY MILLER
KRUTI TRIVEDI
Assistant U.S. Attorneys

THOMAS J. SCORZA
Attorney for Defendant

21